# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| FRANCIS WILLIAM MUNGARI, JR., | Case No.: 2:12-cv-00051-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Francis William Mungari, Jr.'s Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On August 17, 2009, Francis William Mungari Jr. ("Petitioner") applied for disability insurance benefits, alleging a disability onset date of June 25, 2006. (AR 119-130). Petitioner's claim was initially denied on November 17, 2009 (AR 64-67) and, again, on reconsideration on March 16, 2010 (AR 70-74). On April 19, 2010, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 77-78). On November 29, 2010, ALJ R.J. Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Louis Garbrecht, P.C, appeared and testified. (AR 11). An impartial medical expert, R. Thomas McKnight, Jr., Ph.D. also appeared and testified. *See id.*

**MEMORANDUM DECISION AND ORDER - 1**

On January 14, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 11-17). Petitioner timely requested review from the Appeals Council on February 17, 2011. (AR 7). On January 9, 2012, the Appeals Council denied Petitioner's request for review (AR 1-6), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "the ALJ made several errors in reaching the erroneous conclusions that [Petitioner] is not disabled." *See* Pet.'s Brief, p. 2 (Docket No. 14). Specifically, Petitioner asserts that (1) there is not substantial record evidence supporting the finding that Petitioner's medical condition did not meet a listed impairment; (2) the ALJ gave insufficient reasons for rejecting the opinions of a consultative examiner, Dr. Gardner, in favor of the testimony of a medical advisor, Dr. McKnight; and (3) the ALJ gave legally insufficient reasons for rejecting the statements and testimony of both the Petitioner and his son, Kyle Mungari. *See id*. Petitioner therefore seems to request that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for further proceedings before a different ALJ. *See* Pet. for Review, p. 3 (Docket No. 1).[1]

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

---

[1] Petitioner's Petition for Review appears to be inadvertently incomplete, concluding in full: "Wherefore, the Petitioner prays that the final decision of the Secretary upholding the denial of Title II benefits. In addition, the Petitioner requests costs and attorneys' fees under the Equal Access to Justice Act and pursuant to 42 U.S.C. § 406(b)." *See* Pet. for Review, p. 3 (Docket No. 1). The Court presumes, nonetheless, that Petitioner seeks either a reversal or a remand.

**MEMORANDUM DECISION AND ORDER - 2**

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ

**MEMORANDUM DECISION AND ORDER - 4**

found that Petitioner has not engaged in substantial gainful activity since June 25, 2006, the alleged onset date.  (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: depression.  (AR 13-14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 14).

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of work at all exertional levels, but (as to nonexertional limitations) is limited to simple routine work secondary to his mental impairment. (AR 14-17).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that Petitioner is capable of performing past relevant work as a warehouseman because, according to the ALJ, such work does not require the performance of work-related activities precluded by Petitioner's residual functional capacity.  (AR 17).

**MEMORANDUM DECISION AND ORDER - 6**

**B.    Analysis**

1.    <u>Whether Petitioner's Impairment Meets or Equals a Listed Impairment</u>

As discussed above, an ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the impairments meet or equal a listed impairment, he is deemed disabled.  *See id.*; *see also supra* at p. 5.

An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment."  *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525.  An impairment equals a listed impairment only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment.  *See Tackett*, 190 F.3d at 1099.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

Plaintiff argues that, contrary to the ALJ's findings, "he meets the listing of impairments at 12.04."  *See* Pet.'s Brief, p. 3 (Docket No. 14).  A claimant suffering from an affective disorder meets the listed severity level for a depressive syndrome if enough listed factors (the "A

**MEMORANDUM DECISION AND ORDER - 7**

criteria") are present.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A).  The threshold is not

insignificant, as at least four of the following "A criteria" symptoms must exist: (1) anhedonia or

pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight;

(3) sleep disturbance; (4) psychomotor agitation or retardation; (5) decreased energy; (6) feelings

of guilt or worthlessness; (7) difficulty concentrating or thinking; (8) thoughts of suicide; or (9)

hallucinations, delusions, or paranoid thinking.  *See id.*  Additionally, four or more of the "A

criteria" are not enough; in order to be considered *per se* disabled, at least two of the following

"B criteria" must also be present: (1) marked restriction of activities of daily living; (2) marked

difficulties in maintaining social functioning; (3) marked difficulties in maintaining

concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of

extended duration.  *See id* at § 12.04(B).

      Here, there is no issue surrounding whether the "A criteria" requirements are met; rather,

Petitioner challenges the ALJ's findings vis à vis the "B criteria" – namely, that:

> In activities of daily living, the claimant has no restriction.  In social functioning, the
> claimant has mild difficulties.  With regard to concentration, persistence or pace, the
> claimant has no difficulties.  As for episodes of decompensation, the claimant has
> experienced no episodes of decompensation of extended duration.

(AR 14).[2]  In doing so, Petitioner repeats the findings contained within Dr. Gardner's March 9,

2010 "Psychological Assessment."  In that assessment, Petitioner unilaterally assigned those

findings to Listing 12.04's above-referenced "B Criteria," but without Dr. Gardner having

performed any such related analysis.  *See* Pet.'s Brief, pp. 3-6 (Docket No. 14).  This is not

enough.

---

    [2]  The ALJ's analytic support for this conclusion related to his subsequent analysis of
Petitioner's residual functional capacity assessment at the fourth step of the evaluation process.
(AR 14) ("Therefore, the following residual functional capacity assessment reflects the degree of
limitation the undersigned has found in the "paragraph B" mental function analysis.").

**MEMORANDUM DECISION AND ORDER - 8**

First, as Petitioner points out, Dr. Gardner found that, among other things, Petitioner:

- "is tearful at times, mostly early on, as he describes his guilt at not having better 'protected' his family."

- "is preoccupied with the job loss and his sense of injustice at that."

- "is quite avoidant and withdrawn."

- "describe[s] a relatively low level of activity with apathy and difficulty initiating much activity around the home."

- "is significantly socially avoidant and has some apprehension about doing or saying something wrong."

- "is avoidant, apathetic, and struggling with low level of initiative."

(AR 211-214).  However, even though outlining his general findings and observations, Dr. Gardner does not opine on the particular degree/extent of any perceived limitation.  As a consequence, Dr. Gardner's opinions are inadequate to establish the existence of at least two "B criteria" as is required – in other words, simply repeating Dr. Gardner's general findings (as Petitioner does here) does not establish that Petitioner has *marked* restriction of activities of daily living; *marked* difficulties in maintaining social functioning; *marked* difficulties in maintaining concentration, persistence, or pace; or *repeated* episodes of decompensation, each of an extended duration.  *See supra*.  Indeed, Dr. Gardner concludes his assessment by saying that Petitioner's "[p]rognosis is unclear," that Petitioner "seem[s] to be a prime candidate for treatment but has not sought that," and that "[i]t is unclear whether or not he will rally in response to his son's new challenges."  (AR 213).  Simply put, Dr. Gardner's March 9, 2010 "Psychological Assessment" does not establish the existence of at least two "B criteria" as Petitioner contends.

**MEMORANDUM DECISION AND ORDER - 9**

Second, and more fundamentally, evidence in the record (including, at times, the March 9, 2010 "Psychological Assessment") supports the ALJ's finding that Petitioner's depression "does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration."  (AR 14).  For example:

- In November 2009, Petitioner described his daily activities as eating, watching bowling on television, getting on his computer to play games, watching more television, eating dinner in his room, and sleeping. (AR 157).

- In November 2009, Petitioner indicated that he has no problems with his personal care, does not need any special reminders to take care of personal needs and grooming, does not need help or reminders taking medicine, prepares his own meals daily, will mow the yard, will sometimes do the dishes, shops for food two or three times per month, and goes to the bowling alley a few times per month.  (AR 158-161).[3]

- In March 2010, Dr. Gardner opined that Petitioner (1) has a history of "apparently . . . generally getting along adequately on the job"; (2) "is able to carry out his weekly bowling league"; (3) "is able to travel independently"; (4) has "grossly intact" judgment for specific task-related matters "as long as he will exercise it rather than stay in apathy"; and (5) "is able to manage funds." (AR 213-214).

- In March 2010, Dr. Mack Stephenson performed a "Mental Residual Functional Capacity Assessment" of Petitioner, concluding that Petitioner was not "markedly limited" in any aspects relating to (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, or (4) adaptation. (AR 215-216).  Furthermore, in a March 2010 "Psychiatric Review Technique," Dr. Stephenson noted that Petitioner suffered only one or two episodes of decompensation, each of an extended duration.  (AR 229).

- In July 2010, nurse practitioner, Jennifer Hickman, noted that Petitioner "is very active around his son's home helping with the yard work in the summer and the winter" and that Petitioner "also does go bowling, and he does interact with friends there and through that group." (AR 236).  At that time, Petitioner was prescribed medication for his depression.  *See id.*

---

[3] Through a November 2009 "Function Report Adult - Third Party," Petitioner's son, Kyle D. Mungari, more-or-less confirmed these details.  (AR 148-156).

**MEMORANDUM DECISION AND ORDER - 10**

- In October 2010, nurse practitioner, Jennifer Hickman, noted that Petitioner was "amenable to referral to behavioral health at this point" and still "enjoys going to bowling alley . . . with friends."  (AR 237).

- In November 2010, Dr. Thomas McKnight's "Psychiatric Review Technique" found that Petitioner experienced (1) no restriction of activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace, and (4) no episodes of decompensation, each of extended duration.  (AR 251). Moreover, Dr. McKnight concluded that Petitioner's situation represented "a prolonged grieving issue [with] no counseling that would deal well with the issue (long-term therapy) in six months or less"[4] and that Petitioner independently performed his activities of daily living and had no cognitive limitations.  (AR 253).

It is not this Court's function to resolve definitively the issue of whether Petitioner's impairment meets or equals a listed impairment; instead, the Court is to review the basis of the ALJ's decision.  It is clear to the undersigned that the ALJ evaluated the record as to this issue, highlighting those pieces of the record supporting a finding that Petitioner's depression, while severe, does not amount to a listed impairment.  Therefore, substantial evidence exists to support the ALJ's finding in this respect.

    2.    Dr. Gardner's Opinions

Opinions of examining physicians, like Dr. Gardner, are entitled to greater weight than the opinion of a non-examining physician.  *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *See Pitzer*, 908 F.2d at 506.  Even if the opinion of an examining doctor is contradicted by another

_____

[4] Dr. McKnight reiterated as much during the November 29, 2010 hearing, further opining that Petitioner's condition "is not a serious issue, and it is certainly not expected to last a year with even modest treatment" and that Petitioner's symptoms were based upon self-reports. (AR 31-36).

**MEMORANDUM DECISION AND ORDER - 11**

doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Petitioner argues that the ALJ "failed to state sufficient reasons for rejecting the opinion of the examining consultative examiner, Dr. Gardner." *See* Pet.'s Brief, p. 8 (Docket No. 14). Petitioner's arguments in this respect are without merit.

First, while Petitioner seems to argue that the ALJ adopted the opinions of Dr. McKnight, a non-examining physician, *over* and without appropriate consideration and deference to the opinions of Dr. Gardner (*see id.* at pp. 2 & 6), the record does not reflect such an absolute. To be sure, the ALJ affirmatively relied upon Dr. Gardner's opinions in deciding (1) whether Petitioner's depression met or medically equaled a listed impairment, and (2) Petitioner's residual functional capacity, stating:

> Additionally, in a March 2010 mental status examination, Dr. Gardner opined that the claimant's performance on mental control tasks was "grossly intact." Dr. Gardner also observed that the claimant is able to get along with others no the job and noted he is able to attend his weekly bowling league. He noted the claimant had not sought treatment and opined such treatment would be beneficial.

(AR 15-16) (internal citations omitted); *see also* (AR 17) (ALJ concluding his residual functional capacity analysis, stating: "In sum, the above residual functional capacity assessment is supported by Dr. McKnight's testimony, Ms. Hickman's reports, and *Dr. Gardner's observations*." (emphasis added)).

Second, even if one accepted Petitioner's premise that the ALJ rejected Dr. Gardner's opinions in their entirety (or even in any specific part), Petitioner fails to offer any argument how the consideration of these opinions necessarily results in a finding of disability. *See supra*. Thus far, Petitioner has only *repeated* (with no corresponding argument/analysis) select observations

**MEMORANDUM DECISION AND ORDER - 12**

from Dr. Gardner's one-time visit with Petitioner – ostensibly for the purpose of somehow convincing the undersigned that those "cherry-picked" observations operate as *de facto* disability findings. *See id.* They do not. While Dr. Gardner may have highlighted certain impairments suffered by Petitioner, he never actually discusses the functional limitations associated with those impairments within his opinions for the purposes of arriving at a disability determination under the meaning of the Social Security Act.

Third, even if Dr. Gardner's opinions arguably suggest a covered disability, they are not uncontradicted by other medical professionals. For example, as the ALJ stated, both Dr. McKnight's and Dr. Stephenson's findings support a determination of no disability.[5] *See supra.* These findings, coupled with other evidence in the record – namely, Ms. Hickman's medical reports, Petitioner's statements, and Petitioner's son's own statements (*see supra*) – operate as specific and legitimate reasons, supported by substantial evidence in the record, to "reject" Dr. Gardner's opinions.

From such a record, there is no question that Petitioner suffers from a several severe impairment (acknowledged by the ALJ (*see supra*)) that inescapably detrimentally affects him. However, the ALJ did put forward sufficient reasons for rejecting Dr. Gardner's ultimate opinions. *See* Pet.'s Brief, p. 8 (Docket No. 14). While Dr. Gardner's assessment may not have been given the weight Petitioner would have preferred, it was not given independent of the surrounding medical record. That is, in addition to Dr. Gardner's opinions being vague and, at

---

[5] On this particular point, Dr. McKnight dismissed Dr. Gardner's March 9, 2010 "Psychological Assessment," stating in no uncertain terms that it is "not supported by [the] report or the limited record." (AR 253).

**MEMORANDUM DECISION AND ORDER - 13**

times, contradictory in their ultimate conclusions (*see supra*), they are also arguably at odds with other evidence in the record.

In its proper role in deciding these matters, as a general rule, this Court cannot and should not independently resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, this Court assesses whether the ALJ's decision – whatever that may be – is supported by the record. With this in mind, given the conflicting medical opinions concerning Petitioner's alleged mental impairment, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Gardner's medical opinion.  *See supra*.  Because the evidence can reasonably support the ALJ's conclusion in these respects, this Court will not substitute its judgment for that of the ALJ's.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

        3.     <u>Petitioner's Credibility</u>

Petitioner also takes issue with the ALJ's conclusion that Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible.  *See* Pet.'s Brief, pp. 8-10 (Docket No. 14).  As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility

**MEMORANDUM DECISION AND ORDER - 14**

decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

The ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged inability to work. (AR 15-17). For example, despite Petitioner's alleged inability to be gainfully employed, he is able to play games on his computer, prepare his meals, help with yard maintenance and dishes, go shopping, and goes bowling with friends.[6] *See supra*. Petitioner contests certain of the details and extent of such activities, but the ALJ could reasonably conclude that such information indicates that Petitioner is not disabled to the extent he claims or, simply, not motivated or interested in working, thus compromising the persuasiveness of his efforts to obtain disability benefits. The ALJ properly incorporated these findings in questioning Petitioner's credibility.

These reasons, together with the balance of potentially conflicting medical evidence (*see supra*), offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible. The ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record. As required by

---

[6] Petitioner's argument that "the record demonstrates that he does not see or have regular activities with people outside of the bowling alley" (*see* Pet.'s Brief, p. 9 (Docket No. 14)) is unpersuasive toward buttressing Petitioner's credibility. The fact that Petitioner is apparently capable of socializing with friends on a semi-regular basis while bowling contrasts with Petitioner's claim that he altogether "ha[s] no desire to do anything" (AR 143).

**MEMORANDUM DECISION AND ORDER - 15**

controlling law, the ALJ will not be second-guessed here. *See Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[t]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's determination regarding (1) whether Petitioner's depression met or equaled a listed impairment, (2) Dr. Gardner, and (3) Petitioner's credibility, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 16**

## V.  <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review (Docket No. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.



DATED:  **March 29, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**